UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INDIA TAYLOR,

    Plaintiff,                    CASE NO. 18-10268

v.                             HONORABLE DENISE PAGE HOOD

EASTERN MICHIGAN
UNIVERSITY,

    Defendant.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#28]

**I.   INTRODUCTION**

**A. PROCEDURAL BACKGROUND**

On January 23, 2018, Plaintiff India Taylor ("Taylor") filed a Complaint of Employment Discrimination pursuant to Title VII of the Civil Rights Act of 1964 (as amended by the Equal Employment Opportunity Act of 1972) and the Elliot-Larsen Civil Rights Act ("ELCRA"), in which she alleged that she was wrongfully terminated on the basis of race and religion. Taylor also filed a retaliation claim based on her activities with the Michigan Department of Civil Rights ("MDCR") and the Equal Employment Opportunity Commission ("EEOC"). This Court consolidated both lawsuits into the instant matter on July 2, 2019. [ECF No. 25] Before the Court is Defendant Eastern Michigan University's ("Defendant")

1

Motion for Summary Judgment. [ECF No. 28] On October 30, 2019, the Court extended Taylor's time to file a response. Taylor filed a Response to this Motion on November 1, 2019. [ECF No. 32] In this Motion, Defendant argues that there are no genuine issues of material fact because Defendant's actions were for "legitimate non-discriminatory and non-retaliatory business reasons."

### B. FACTUAL BACKGROUND

Defendant is a public, mid-size research university, located in Ypsilanti, Michigan. Taylor began working at Eastern Michigan University ("EMU") in 2010. Taylor is an African-American, Christian woman who was previously employed by EMU. She held various positions at EMU from March 2010 to March 2018. Taylor was first enrolled as a Senior Secretary, which is a CS05 level position. All of Taylor's employment roles were clerical positions at the CS05 level. Taylor's employment at EMU was governed by EMU's Employee Work Rules and the Collective Bargaining Agreement ("CBA") between EMU and UAW Local 1975 (the "Union"), which was effective from July 1, 2016-June 30, 2019.

In 2015, Taylor went on educational leave. In November 2016, Taylor returned to EMU upon successfully applying and interviewing for an Admissions Processor Position in the Department of Special Education. [ECF No. 32, Pg.ID 271] While in this position Taylor repeatedly clashed with the Department Head,

Dr. Janet Fisher ("Dr. Fisher") and the office secretary, Dawn Leighton ("Leighton"). [*Id.*] Taylor alleges that Leighton and her did not get along because "she was always speaking under her breath" and "emailed [Taylor] a link" to watch President Trump's inauguration. [*Id.* at 293] Taylor further asserts that Dr. Fisher and Leighton "nitpick[ed]" her work and claimed it was "unacceptable." [*Id.* at 273] On February 17, 2017, Taylor had an incident involving Dr. Fisher. [*Id.* at Pg.ID 272] Dr. Fisher and Taylor had a disagreement about Taylor's timesheet. [*Id.*]

The facts alleged by Taylor are as follows. Taylor alleges that Dr. Fisher asserted that Taylor's time entries conflicted with Leighton's recollection. Taylor asked, "are you going to take Dawns [sic] word over mines [sic]?" [*Id.*] Dr. Fisher alerted Taylor that she would not sign her paycheck unless Taylor edited her entries. [*Id.*] Taylor subsequently realized she would not get paid without Dr. Fisher's signature and exclaimed, "the Devil Is A Liar." [*Id.*] Upon hearing Taylor's statement, Dr. Fisher suggested that Taylor leave Dr. Fisher's office and return to her desk. [*Id.*]

When Taylor returned to her desk she began playing gospel music. [*Id.*] Dr. Fisher told Taylor that her music was too loud. [*Id.*] Taylor acknowledges that Dr. Fisher admitted that it was "nice music" but that it could not be played in the office. [*Id.*] As Taylor moved to turn down the music, Dr. Fisher stated that she

3

would call campus security if she did not turn the music down faster. [*Id.* at 273] When Dr. Fisher went to her office to call campus security, Taylor told Dr. Fisher that she "was going to the union." [*Id.*]

According to Defendant, Taylor had accumulated three disciplinary points through February 2017. [ECF No. 28, Pg.ID 116] Two points resulted from excessive tardiness and attendance issues and the other resulted from past employment issues. [*Id.*] Following Defendant's investigation into the February 2017 incident with Dr. Fisher, Taylor accumulated two additional disciplinary points, which led to five total points. [*Id.* at 116-17] Under the CBA, five points results in an automatic dismissal. However, by working with the Union, Taylor was able to reduce her points from five to three and was placed on "involuntary recall status for recall to a different position when available." [ECF No. 28, Pg.ID 118] After the investigation, Taylor asserts that she received an email "telling [her] to resign or retire." [ECF No. 32, Pg.ID 275]

Taylor's next position at EMU was in the School of Business with Dr. Hershey. Taylor asserts that Dr. Hershey made her life difficult by "focusing on [her]" and incorrectly claimed that she was not punctual. [*Id.* at 276] Taylor further claims that Dr. Hershey was "busy focusing on social media." [*Id.*] According to Defendant, Taylor was eventually removed from Dr. Hershey's staff because of issues she had computing and inputting lecturers' time. [ECF No. 28, Pg.ID 120]

During Taylor's deposition she admitted that EMU "disqualified [her] for the position . . . because . . . the lecturers weren't going to get the correct pay." [*Id.*] Upon leaving Dr. Hershey's staff, Taylor was returned to recall status because there were no open positions available for her in other departments. [*Id.*]

In October 2017, Taylor received notice that she was being recalled to a CS05 position as an Admissions Processor. Taylor responded within the required three-day period. However, EMU rescinded the offer because EMU was considering switching the role from CS05 to CS06. EMU also asserts that the employee designated to train Taylor went on a leave of absence. Had EMU hired Taylor, there would have been no one available to train her. Following EMU's rescission, Taylor met with EMU's Office of Diversity and Affirmative Action to discuss the offer revocation.

Taylor was later recalled again on Friday, March 2, 2018, for a CS05 Admissions Processor position. Taylor failed to respond to the offer within the three-day period proscribed by the CBA. Taylor did respond on March 8, 2018. Taylor claims that the U.S. post office did not deliver the letter until March 7, 2018, and that EMU sent the letter on a Friday to intentionally ensure she would not respond in time. Taylor now brings her claims alleging racial and religious discrimination under Title VII and the ELCRA.

## II. LEGAL ANALYSIS

### A. Standard of Review

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, the Supreme Court has "never suggested procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). Indeed, a *pro se* litigant "must conduct enough investigation to draft pleadings that meet the requirements of the federal rules." *Burnett v. Grattan,* 468 U.S. 42, 50, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). Courts have refused to excuse *pro se* litigants who failed to follow basic procedural requirements such as meeting "readily comprehended" court filing deadlines. *E.g., Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991); *Eglinton v. Loyer,* 340 F.3d 331, 335 (6th Cir.2003). Likewise, courts have also refused to grant special or preferential treatment to *pro se* parties in responding to summary judgment motions. *Brock v. Hendershott,* 840 F.2d 339, 343 (6th Cir.1988).

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

Rule 56(a) of the Federal Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the court must view admissible evidence in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary

judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Title VII and ELCRA

#### *1. Discrimination Claims*

Taylor argues that she was discriminated and retaliated against under Title VII and the ELCRA due to her race and religion. Title VII and ELCRA claims are analyzed together. *Curry v. SBC Commc'ns, Inc.*, 669 F. Supp. 2d 805, 824 (E.D. Mich. 2009). Under both Title VII and the ELCRA, a "plaintiff bringing a[n] ... employment discrimination claim must present either direct evidence of discrimination, or circumstantial evidence that allows for an inference of discriminatory treatment." *Reeder v. City of Wayne*, 177 F.Supp.3d 1059, 1079 (E.D. Mich. 2016) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)). Taylor has not argued that there is any direct evidence of discrimination,

and only attempts to establish her claims arguing the existence of circumstantial evidence, mixed-motives, and pretext.

When a plaintiff seeks to prove discrimination by circumstantial evidence, the court applies the *McDonnell Douglas* framework. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir.2000). First, a plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) that she was qualified for the job and performed her duties satisfactorily; (3) that despite her qualifications and performance, she suffered an adverse employment action; and (4) that she was replaced by a person outside of the protected class or was treated less favorably than a similarly situated individual outside of the protected class. *Id.* at 572-573. If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employee's rejection. *Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 604 (E.D. Mich. 2016) (internal citations omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "Circumstantial evidence ... is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse

employment action against the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *McDonnell Douglas*, 411 U.S. at 805. Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805; *Taylor v. Modern Engineering*, 252 Mich. App. 655, 659 (2002).

A plaintiff can establish pretext by producing evidence sufficient for a jury to reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) ("A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.").

Taylor argues that there is enough circumstantial evidence to show that she was fired under the mixed motive theory and that Defendant's stated reasons are pretexts for her termination from Dr. Fisher's office and Dr. Hershey's office. In support of her claims that Dr. Fisher's office discriminated on the basis of race and religion, Taylor provides an email from Ms. Carla Williams, a former employee under Dr. Fisher. [ECF No. 32, Pg.ID 300] Ms. Williams' email is not an affidavit

or deposition, nor does it reference any direct or circumstantial evidence of discrimination. As Defendant argues Ms. Williams email simply states her "own list of workplace disagreements." [ECF No. 34, Pg.ID 368] The Court does not dispute that Dr. Fisher may have been a difficult supervisor, but Taylor has produced no evidence to suggest that Taylor's removal from Dr. Fisher's office was motivated by animus or discriminatory intent.

The Court finds that Taylor's cited caselaw is distinguishable from her matter.[1] The *Tucker v. Koegel Manufacturing* case differs from the instant matter because plaintiff was able to show that the employer knew that the "N-word" was written on a bathroom stall and allowed it to remain eight and a half months later. *Tucker v. Koegel Manufacturing*, 16-107757-CZ. The evidence showed that Koegel's actions were indifferent towards or supported the intimidation of the only African-American employee in the department. The plaintiff in *Tucker* complained to both her union and her employer but the union representative began working with the employer "behind [the plaintiff's] back." Taylor's attempts to draw parallels between *Tucker* and the instant case are not supported by the evidence. Taylor claims that the university told her that she was removed from Dr. Fisher's office "because all white women worked" there. [ECF No. 32, Pg.ID 281] However, as Defendant

---

[1] Taylor's cited case resolved in a settlement and the quoted excerpt was taken from, and written from the Plaintiff's business website and was not written by a court.

11

asserts, that statement is inadmissible hearsay and was made by Taylor's union representative, Ms. Theresa O'Neil-Darling. [ECF No. 28, Pg.ID 122 n.1] Defendant asserts that Taylor's union representative was not a decisionmaker in any of Taylor's employment matters and that Ms. O'Neil-Darling's personal opinion was not given as an "official representative of the university." *Id.*

Taylor further states that a university official told her that MLK Day was "not a [sic] approved holiday." [ECF No. 32, Pg.ID 273] Defendants counter that the incident Taylor recalls involved a non-decision maker who opined that MLK Day was not a holiday in reference to admissions application deadlines for graduate students. [ECF No. 34, Pg.ID 367, n.1] Taylor also mentions Dr. Fisher called her "colored" in an email once but provides no documents or admissible testimony to support this claim.

Defendant argues that Taylor cannot prove a prima facie case that discrimination factored into either her layoff or termination. Defendant argues that all adverse employment actions were the result of legitimate business reasons. Taylor alleges that her March 2017 termination was the result of discrimination. Defendant responds by providing detailed documentation about Taylor's disciplinary history and the calculation of her disciplinary points. Defendant argues that Taylor has not been able to prove that for comparable actions, she was treated differently from similarly situated employees of an unprotected class. *Chattman v.*

*Toho Tenax Am., Inc.*, 686 F.3d 339, 347 (6th Cir. 2012); *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

Based on Taylor's submitted documents, the Court finds that Taylor has failed to establish that Defendant's proffered reasons for terminating her were pretextual and nonlegitimate. The Court does not dispute that Taylor has submitted evidence showing that working in her departments may have been difficult. However, the Court finds that Taylor has presented no evidence that Dr. Fisher, Dr. Hershey, or other EMU officials, did or said anything related to race or religion. Taylor even admits that Dr. Fisher acknowledged that the gospel music was "nice" but "too loud" for the workplace. Although the article[2] Taylor submitted, discussing the racial profiling that a Smith college student experienced is informative, it is not probative in the instant case. Dr. Fisher had a legitimate reason for calling campus security and gave Taylor prior notice that she would involve campus security if necessary. Taylor produced no evidence that other people with extensive disciplinary records were treated any differently. The Court also finds that Taylor has failed to establish that other similarly situated individuals in similar scenarios were treated any differently. The Court **GRANTS** Defendant's Motion for Summary Judgment as it pertains to Taylor's discrimination claims.

---

[2] Oumou Kanoute, *ACLU*, Sept. 13, 2018, https://www.aclu.org/blog/racial-justice/race-and-criminal-justice/smith-college-employee-called-police-me-eating-lunch.

### *2. Retaliation Claims*

To establish a prima facie case of retaliation under Title VII, a plaintiff has the initial burden of establishing four elements: (1) the plaintiff engaged in protected activity; (2) the defendant knew about the plaintiff's exercise of this right; (3) the defendant took an employment action adverse to the plaintiff; and (4) the protected activity and the adverse employment action are causally connected. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for its action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (citation omitted). If the employer meets that burden, it is the plaintiff's burden to demonstrate, by a preponderance of the evidence, that the legitimate reason given by the employer was pretext for retaliation. *Id.*

To establish pretext a plaintiff may show that (1) the proffered reasons for termination had no basis in fact, (2) that the proffered explanations did not actually motivate the adverse action, or (3) that the proffered reasons were insufficient to motivate the adverse employment decision. *Hubbell v. Fedex Smartpost*, 933 F.3d 558 (6th Cir. 2019).

Taylor claims that her reassignment from Dr. Hershey's office, 2017 position rescission, and 2018 termination were meant to retaliate against her for filing her

claim with the MDCR and the EEOC. Taylor argues that she has met the minimum standards to show retaliation. Taylor claims that (1) she engaged in a protected activity under Title VII; (2) Defendant knew about her protected activity; (3) she has suffered an adverse employment action and decision through her recall, rescission, and eventual termination; and (4) that there was a causal link between her termination and her filing a claim with the MCDR. [ECF No. 32, Pg.ID 279]

Defendant argues that Dr. Hershey did not know that Taylor filed a claim with the MDCR and could not have based his professional opinion of Taylor based on her protected activity. Defendant also argues that Taylor's "Affidavit of Testimony after Deposition" cannot be considered because it "contradicts [her] earlier sworn testimony." *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016). The Court agrees with that assertion and also finds that her newly admitted statements only emphasize that working for Dr. Hershey may be difficult generally—not because Taylor is African-American or Christian.

Taylor uses *Hubbell* to argue her main points. Taylor correctly asserts that *Hubbell* denied summary judgment because of circumstantial evidence. *Hubbell*, 933 F.3d at 566. However, the circumstantial evidence presented in *Hubbell* established a clearer picture of but-for causation. *Id.* After the plaintiff explicitly disagreed with her employer's opinions about women, her employer "took several actions that made her job harder." *Id.* at 563. *Hubbell* also differs from Taylor's case

15

because the plaintiff had received several honors and awards, and had never been cited for disciplinary reasons until after her protected activity. *Id.* The employer's statements in *Hubbell* were also more indicative of animus. *Id.* In *Hubbell*, the employer suggested that women were better suited for administrative roles and that the plaintiff would have a difficult time at the company if she did not take the demotion. *Id.*

Defendant argues that EMU's Office of Diversity and Affirmative Action's own conclusion mirrors that of EMU's Office of Human Resources—EMU's decision to rescind the 2017 offer was a legitimate business decision because someone who has not held a CS06 position before could not hold one if that person were only qualified for a CS05 position. [ECF No. 28, Pg.ID 121] Taylor also is unable to establish that she would have been recalled "but-for her MDCR charge." [EFC No. 34, Pg.ID 370]

Although the Court does find there to be some dispute about when Taylor received her recall letter in March 2018, the factual dispute does not relate to a material issue. Taylor is unable to dispute that the CBA prescribes that employees have three days to respond to recall letters or that Taylor was treated any differently than anyone else who would have been in that position. Taylor provides no direct or circumstantial evidence showing that her protected activity prompted EMU to terminate her.

Taylor is unable to show that Defendant's proffered reasons had no basis in fact nor did not actually motivate EMU to terminate her. Taylor also cannot show that Defendant's proffered explanations are insufficient to motivate EMU to have taken the steps it took against Taylor. Taylor had an extensive history of disciplinary and work-related issues. Defendant also went to great lengths to document all of its steps involving Taylor. Defendant even extended Taylor's probationary period with Dr. Hershey hoping that Taylor would eventually become acclimated to the department. The Court finds that Defendant's proffered explanations are not pretextual and are legitimate. The Court **GRANTS** Defendant's Motion for Summary Judgment as it pertains to Taylor's retaliation claims.

### III. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED that Defendant Eastern Michigan University's Motion for Summary Judgment [ECF No. 28] is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff India Taylor's claims against Defendant are **DISMISSED**.

Dated:  November 30, 2020          s/Denise Page Hood
                                   Chief Judge, United States District